**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| ADRIAN L. LACEY, : | |
| : | Civ. Action No. 18-11176(RMB) |
| Petitioner : | |
| : | |
| v. : | **OPINION** |
| : | |
| DAVID ORTIZ, Warden : | |
| FCI FORT DIX, : | |
| : | |
| Respondent : | |
| : | |

**BUMB**, District Judge

This matter comes before the Court upon Petitioner Adrian L. Lacey's petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his loss of good conduct time resulting from a prison disciplinary hearing (Pet., ECF No. 1); Respondent's Answer to Petition For a Writ of Habeas Corpus ("Answer," ECF No. 7); and Petitioner's Response to Respondent's Answer ("Reply," ECF No. 8.) On July 12, 2018, this Court granted Petitioner's motion to supplement/replace the following pages of his "Motion for 2241," pages 8, 12, 15 and 19. (Order, ECF No. 4; Mot. for 2241, ECF No. 1-2 at 8, 12, 15, 19.) For the reasons discussed below, the Court denies the petition.

I.   BACKGROUND

Petitioner is serving an aggregate federal sentence of 10 years, 8 months and 28 days, imposed by the U.S. District Court, Southern District of Alabama for mail and wire fraud and aggravated identity theft. (Declaration of Tara Moran ("Moran Decl.," Ex. 1, ECF No. 7-3 at 3-6.) According to the Bureau of Prisons ("BOP"), Petitioner's projected release date is January 28, 2022. (Moran Decl., Ex. 1, ECF No. 7-3 at 2.)

On October 20, 2015, Petitioner was designated to the Federal Correctional Complex in Sumter County, Florida ("FCC Coleman"). (Moran Decl., Ex. 4, ECF No. 7-3 at 22.) Petitioner was issued an incident report by staff on March 25, 2016, charging him with attempted introduction of a hazardous tool, in violation of BOP Disciplinary Code 108A, and use of a phone for abuses, in violation of Code 197. (Moran Decl., Ex. 5, ECF No. 7-3 at 27-30.)

The reporting staff member described the incident as follows:

> On March 25, 2016, at 8:00 am, an SIS investigation concluded inmates Adrian Lacey, Reg. No. 08013-003 and Jerry Taylor, Reg. No. 84796-080, utilized the inmate telephone and email systems to conspire and collude with others on the outside, including Fred Mitchell and Triesha Washington, to introduce two cell-phones, 292 grams of tobacco, 20.1 grams of suspected K-2 Spice, 84 white pills, and 99 red pills disguised as incoming inmate property from FCI Beaumont. While still housed at FCI Beaumont in August 2015, Lacey contacted former BOP inmate John Shively and sent him detailed instructions on how to introduce the contraband disguised as

property. On 8-18-15, Lacey received an e-mail
from John Shively stating Shively did not feel
"comfortable about it all" after reading the
"legal work" Lacey had sent him. The "legal
work", "memo", or "motion" mentioned in the
subsequent emails and phone calls of both
Taylor and Lacey, is coded reference to the
instructions sent by Lacey to Shively on how
to prepare the packaging and property forms
for the introduction.

Taylor was not included in those plans until
10-20-2015 when Lacey arrived at COL [FCC
Coleman] and encountered him. After Shively
expressed his desire not to be involved, he
was asked by Lacey in a 10-21-15, email to
forward the instructions to Fred Mitchell,
inmate Taylor's brother. Fred Mitchell, at the
direction of inmate Taylor, was instrumental
in purchasing the tobacco (11-18-15 phone call
Taylor asks about tobacco, Fred mentions the
cigarettes), the cell phones (11-21-15 call
Mitchell refers to them as "headphones",
Taylor calls them "watches" in 11-22 call and
tells Fred to "activate" them) and the various
food items used to "camouflage" the items
packed in the box (11-22-15 call talks of
mackerel and tuna, etc. as camouflage). Fred
Mitchell also purchased the box used in the
introduction, which is referred to as a
"crate/crates" in numerous phone calls (11-7,
11-10, 11-14, 11-16, 11-19, 11-21). Taylor
uses the word "two-two" (11-22 and 11-29) when
discussing the purchase and packaging of the
K-2 in the box. Fred delivered the items to
Triesha Washington, who completed the mailing
labels and preparation of the box for shipment
to COL.

In a December 7th phone call with inmate
Taylor, Ms. Washington confirms the phones are
activated and is instructed to mail the box on
December 11, 2015 by inmate Taylor. In the
December 11 three-way phone call Lacey placed
to his mother and Ms. Washington, he instructs
Ms. Washington which UPS label to use. Taylor
and Lacey both remained actively engaged in

> the conspiracy until the December 17 recovery
> of the contraband. Based on the information
> gathered from Taylor and Lacey's phone calls,
> SIS staff determined the package would arrive
> at the institution on December 17, 2015. Upon
> receiving the package and entering the
> tracking number (1Z 771 X18 03 0400 6592) into
> the UPS website, it was determined the
> contraband was sent from Austin, Texas, city
> of residence of Triesha Washington, on
> December 14, 2015, at 12:27 am.

(Moran Decl., Ex. 5, ECF No. 7-3 at 27-30.)

The incident report was delivered to Petitioner on April 26, 2016, the same day the FBI released the report after declining to pursue criminal prosecution. (Moran Decl., Ex. 6, ECF No. 7-3 at 30.) When Petitioner received the report and was advised of his rights, he stated, "I am innocent. It never happened." (Id.) Petitioner did not request any witnesses for the hearing. (Id.)

The investigating lieutenant referred the incident report to the Unit Discipline Committee ("UDC") for an initial hearing, which was held on May 2, 2016. (Id.) Petitioner told the UDC he was not guilty, and the UDC referred the incident report to a DHO for a final disposition, based on the severity of the conduct described. (Id.)

On May 2, 2016, Petitioner received a form "Notice of Discipline Hearing Before DHO," explaining that a DHO hearing would take place on the next available docket. (Moran Decl., Ex. 8, ECF No. 7-3 at 38.) On this form, Petitioner requested a staff representative and to call inmate Christopher Bell as a witness.

4

(Moran Decl., Ex. 8, ECF No. 7-2 at 38.) Petitioner signed the "Inmate Rights at Discipline Hearing" form, acknowledging that he was advised of his rights. (Moran Decl., Ex. 7, ECF No. 7-3 at 36.) On May 11, 2016, Officer Echevarria agreed to serve as Petitioner's staff representative. (Moran Decl., Ex. 9, ECF No. 7-3 at 40.

Petitioner's disciplinary hearing was held on May 17, 2016. (Moran Decl., Ex. 10, ECF No. 7-4 at 2.) Petitioner acknowledged that he understood his rights and did not have documentary evidence to present. (Id. at 3.) As Petitioner's staff representative, Officer Echevarria reviewed phone calls and emails relevant to the incident report and said he discussed the contents with Petitioner. (Id. at 2.) Petitioner denied the charges, stating "I was never involved, I was only helping Taylor with his legal work. Taylor asked me to call his niece, Triesha Washington. My mother called Triesha and Fred." (Id.)

Petitioner requested four witnesses to testify that he had a medical condition and was trying to "check-in" to the SHU when the package containing contraband arrived. (Id.) The DHO did not permit the witnesses to testify because their testimony was not directly relevant to the charges. (Id.)

The DHO determined that Petitioner violated Code 108(A) by attempting to possess a hazardous tool and dismissed the charge of criminal telephone abuse. (Id.) In support of his decision, the

DHO cited the incident report and SIS investigation, including email records of Petitioner's communications with former inmate Shiveley, Taylor's brother Fred Mitchell, and Taylor's niece Triesha Washington, discussing purchase of packaging and preparation of mailing labels. (Moran Decl., Ex. 10, ECF No. 7-4 at 3-5.) The DHO noted that Petitioner, Taylor and Shively were assigned to FCI Yazoo City at the same time; the package containing contraband was addressed to Petitioner and was disguised as inmate property from FCI Beaumont, and the tracking number of the package was traced to Triesha Washington. (Id.)

The DHO imposed sanctions including: (1) disallowance 40 days of good conduct time; (2) forfeiture 100 days of non-vested good conduct time; and (3) loss of visiting, telephone, commissary and email privileges for one year. (Id. at 5.) The DHO explained that the sanctions were imposed due to the threat to safety and security posed by attempts to possess a cell phone. (Id. at 6.) The DHO's report was delivered to Petitioner on June 16, 2016. (Id.) Petitioner challenged the DHO's decision through all levels of the BOP administrative procedure program. (Moran Decl., Ex. 2, ECF No. 7-2 at 2, ¶4.)

II.  DISCUSSION

A.  Standard of Law

28 U.S.C. § 2241 provides, in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . .
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless—
> > . . .
> > (3) He is in custody in violation of the Constitution or laws or treaties of the United States; . . .

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct." Denny v. Schultz, 708 F.3d 140, 143-44 (3d Cir. 2013) (citing 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008)). Based on this statutorily created right, "a prisoner has a constitutionally protected liberty interest in good time credit." Id. (quoting Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974)).

The Supreme Court defined the due process protections required where a prison disciplinary hearing may result in loss of good conduct time. The five due process protections in a prison disciplinary proceeding include: 1) the right to appear before an impartial decision-making body; 2) twenty-four hour advance written notice of the charges; 3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; 4) assistance from an inmate representative, if the charged inmate is illiterate or complex issues are involved; and 5) a written

decision by the fact-finder including the evidence relied on and the reason for the disciplinary action. <u>Wolff</u>, 418 U.S. at 546-71. Further, the DHO's decision must be supported by "some evidence." <u>Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill</u>, ("<u>Hill</u>") 472 U.S. 445, 455 (1985).

B.    <u>Notice of Charges Under 28 C.F.R. § 541.5</u>

1. <u>The Parties' Arguments</u>

Petitioner was placed in the SHU without notice of the charges on December 17, 2015. (Mot. for 2241 ("Petr's Mem.), ECF No. 1-2 at 4-5.) Petitioner contends he was not given notice of the disciplinary charge until 131 days after the arrival of a package of contraband addressed to Petitioner at FCC Coleman on December 17, 2015. (<u>Id.</u>) Petitioner claims that exculpatory e-mails and phone calls, which occurred two weeks prior to December 17, 2015, were purged under a 90-day retention policy before Petitioner received the notice of charges. (<u>Id.</u> at 6.) Petitioner further contends the lapse of time affected the memory of his witnesses and that the BOP violated 28 C.F.R. § 541.5(a) and (b) by providing late notice of the charges. (<u>Id.</u> at 6-7.)

Respondent argues there is no due process right to receive notice of an incident report within 24 hours of the underlying conduct, but only that the inmate receive written notice of the charges at least 24 hours before the disciplinary proceeding. (Answer, ECF No. 7 at 18, citing <u>Gross v. Warden, USP Canaan</u>, 720

F. App'x 94, 96-97 (3d Cir. 2017.) Further, 28 C.F.R. § 541.5 does not guarantee that an inmate will receive an incident report within 24 hours of staff becoming aware of the inmate's involvement in the incident, but states only that the inmate will "ordinarily" receive the incident report within 24 hours. (Answer, ECF No. 7 at 18.) It is not the ordinary case when an investigation is referred from criminal prosecution, as happened here. (Id.)

The incident report was written the day that SIS completed its investigation on March 25, 2016, but the report was suspended for referral to the FBI for prosecution. (Id. at 18-19.) BOP Program Statement 5270.09 requires suspension of an incident report pending FBI investigation. Petitioner received the incident report at 5:10 p.m. on April 26, 2016, the same day it was released by the FBI. (Id. at 19, citing Moran Decl., Exhibits 5, 6.) Petitioner contends the "business day" ended at 4:00 p.m.; therefore the notice was delivered late. (Id. at 20.) Respondent asserts there is nothing in the Program Statement requiring delivery by 4:00 p.m. (Id.)

Further, Respondent contends that "a violation of prison regulations in itself is not a constitutional violation." (Id., quoting Gibson v. Federal Bureau of Prisons, 121 F. App'x 549, 551 (5th Cir. 2004)). If the due process requirements described in Wolff are met, a technical failure to satisfy BOP regulations does not violate due process, unless the inmate demonstrates actual

prejudice as a result of the violation. (Answer, ECF No. 7 at 20,
citing Millhouse v. Bledsoe, 458 F. App'x 200, 203 (3d Cir. 2012;
Gross, 720 F. App'x at 96)).

Respondent contends that Petitioner cannot make the showing
of actual prejudice because (1) the BOP retention policy for e-
mails and calls is 180 days, not 90 days (citing Moran Decl., Ex.
11, ECF No. 7-11 at 4); (2) and Petitioner has not shown that any
of the evidence that he claims was purged was in fact exculpatory.
(Id. at 20-21.) Further, although Petitioner alleges that the
memory of his witnesses has faded, the proposed testimony of his
witnesses was not relevant to the charges. (Id. at 21.)

In reply, Petitioner states that he was held in the SHU for
four-and-a-half months before he was given notice of a charge or
an incident report. (Reply, ECF No. 8 at 6.) He contends that 28
C.F.R. § 541 requires the investigating officer to provide a copy
of the incident report at the beginning of the investigation,
unless there is a good cause for later delivery. (Id. at 7-8.)
Petitioner argues that the regulation is mandatory unless the
inmate is absent from the institution or medical conditions support
delay in delivery of the incident report. (Id. at 8.) Petitioner
claims the word "ordinarily" relied on by Respondent, is not in
the BOP policy. (Id.)

Petitioner further asserts that he was prejudiced by the delay
because he could not remember exculpatory e-mails and

conversations that he could have directed his staff representative to review, and Petitioner was not permitted to review this evidence himself. (Reply, ECF No. 8 at 9-10.) Petitioner's staff representative only reviewed e-mails and transcripts from dates supplied by Petitioner. (Id. at 11.)

    2.  Analysis

The version of 28 C.F.R. § 541.5(a) in effect from June 20, 2011 to the present states:

> (a) Incident report. The discipline process starts when staff witness[es] reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

28 C.F.R. § 541.5(a).

"*Wolff* does not require issuance of the charge within 24 hours of the incident. *Wolff* only requires that an inmate receive written notice of the charges 24 hours before a hearing." Lang v. Sauers, 529 F. App'x 121, 123 (3d Cir. 2013) (per curiam); *accord* Wallace v. Federal Detention Center, 528 F. App'x 160, 163 (3d Cir. 2013) (per curiam).

Here, Petitioner received written notice of the charges at 5:10 p.m. on April 26, 2016, the same day the incident report was released by the FBI. (Moran Decl., Exhibits 5, ECF No. 7-3 at 27,

¶¶14-16 and Ex. 6, ECF No. 7-3 at 33.) The DHO hearing was commenced at 11:00 a.m. on May 17, 2016. (Moran Decl., Ex. 10, ECF No. 7-4 at 2.) The due process requirement that a prisoner receive notice of the charges 24 hours before a hearing was met. Further, 28 C.F.R. § 541.5(a) does not mandate earlier notice but only states a general policy inapplicable to a case that is referred to the FBI for potential criminal prosecution. See BOP Program Statement 5270.09 (discussing 28 C.F.R. § 541.5(b))[1]; Gross v. Warden, USP Canaan, 720 F. App'x 94, 96-97 (3d Cir. 2017) (per curiam) (stating 28 C.F.R. § 541.5(a) "does not mandate when an incident report is to be provided to an inmate, but provides a general policy.")

C.    Failure to Call Witnesses

1.    The Parties' Arguments

Petitioner contends the DHO deprived him of a viable defense of actual innocence by not permitting him to call witnesses on his behalf. (Petr's Mem., ECF No. 1-2 at 9.) Petitioner told the DHO that one witness would testify that Petitioner was suffering from an aggravated sciatic nerve one week prior to the package of contraband arriving at FCC Coleman, and Petitioner sought to be admitted to the SHU due to his pain. (Id.) Petitioner also wished to call as witnesses each lieutenant who knew that Petitioner "was medically carted" from the dining hall to his living quarters on

---

[1] Available at www.BOP.gov/policy.

December 13, 14, 15, 16 and 17, 2015 because Petitioner's pain was too severe for him to walk. (Petr's Mem., ECF No. 1-2 at 9-10.) Petitioner sought admission to the SHU so his meals would be delivered to him. (Id. at 11.) Petitioner contends this shows his innocence because if he had been in the SHU, he would not be able to accept and sign for the package that arrived. (Id. at 12.)

Respondent counters that inmates do not have an unqualified right to call witnesses (citing Kenney v. Lewisburg, 640 F. App'x 136, 139 (3d Cir. 2016)), and there is no denial of due process if the witnesses' testimony would be irrelevant, repetitive or unnecessary. (Answer, ECF No. 7 at 21, citing Moles v. Holt, 221 F. App'x 92, 95 (3d Cir. 2007)).

Petitioner wished to present witnesses to testify that he suffered a back injury prior to the package of contraband arriving, and he had tried to "check in" to SHU for medical treatment on and before the day the package was received on December 17, 2015. (Id. at 22.) The DHO found the proposed testimony was not relevant because none of the witnesses could contradict charges that Petitioner used the telephone and e-mails to have a box mailed to him. (Id.) The fact that Petitioner sought medical treatment that would have precluded him from going to the mail room and signing for the package around the time the package arrived does not cast doubt on the evidence that he was a party to a conspiracy with

another inmate to mail in contraband disguised as inmate property. (Answer, ECF No. 7 at 22.)

   2.   Analysis

"Inmates do not have an 'unqualified right to call witnesses.'" Kenney v. Lewisburg, 640 F. App'x 136, 139 (3d Cir. 2016) (per curiam) (quoting Wolff, 418 U.S. at 566.) There is no due process violation where a petitioner fails to show prejudice from his inability to call a witness. See Anderson v. Bledsoe, 511 F. App'x 145, 148 (3d Cir. 2013) (per curiam) (no due process violation where DHO did not call an inmate's witness because the witness provided a written statement that his testimony would not have exculpatory value); see Pachtinger v. Grondolsky, 340 F. App'x 774, 776 (3d Cir. 2009) (per curiam) (no due process violation where Petitioner failed to show prejudice based on his inability to call a witness).

Petitioner sought to call witnesses who would testify that he hurt his back and tried to get admitted to the SHU for medical reasons on or before the day the package of contraband was delivered to the prison, addressed to Petitioner. Petitioner contends this testimony would have shown that he was not expecting a package to arrive at the prison because he would have been unable to receive it if he was in the SHU.

Petitioner was not prejudiced by the inability to call witnesses. The DHO could have found Petitioner guilty of attempt

to possess a cell phone based on the e-mails and telephone call transcripts arranging for delivery of the package, regardless of the fact that Petitioner hurt his back around the time the package was to be delivered and may have been unable to sign for it the day it arrived.

D.    The Staff Representative and Right to an Impartial Decisonmaker

    1.    The Parties' Arguments

Petitioner contends his staff representative, Officer Echevarrio, violated his due process rights by making inculpatory statements to the DHO at the hearing and by failing to gather documents for Petitioner's defense. (Petr's Mem., ECF No. 1-2 at 13.) He further argues that his staff representative "became an investigator" in violation of 28 C.F.R. § 541.8(d)(2). (Id.)

The documents that Petitioner's staff representative refused to gather for his defense included (1) the property sheet from R&D showing that Petitioner had received his property a month prior to December 17, 2015, indicating that Petitioner was not entitled to any other property; and (2) emails from the TRULINCS system showing Petitioner was complaining about his nerve pain to his family and seeking help. (Petr's Mem., ECF No. 1-2 at 14.)

As for the alleged inculpatory statements by his staff representative, Petitioner explained:

> During the hearing when the DHO was detailing his findings or summarizing his verdict, the

staff rep was in agreement with the DHO by
nodding his head and then oftentimes by
verbally pointing discrepancies when the DHO
allowed Petitioner to give his version of the
case. As stated in the above-mentioned staff
rep even pointed out to the DHO that
Petitioner was talking in codes. When
Petitioner complained to the DHO about staff
Rep's bias[ed] comments and lack of
investigation and asked DHO to postpone
hearing to get a new staff rep, DHO declined.
. . .
DHO made an emphasis of the Staff Rep's
findings in the DHO Report which undoubtedly
indicated that the DHO's decision was
influenced by the Staff Rep's biased comments.
… The abovementioned highlights how
Petitioner's rights to appear before an
impartial decision-making body were violated
as required by Wolff.

(Petr's Mem., ECF No. 1-2 at 15-16.)

Respondent argues that Wolff does not require a staff
representative to assist an inmate unless the inmate is illiterate
or the complexity of the issue makes it unlikely that the inmate
can collect and present evidence necessary for an adequate
comprehension of the case. (Answer, ECF No. 7 at 23.) In any event,
Petitioner was provided a staff representative who reviewed and
presented relevant evidence, and the failure to present irrelevant
evidence did not violate Petitioner's rights. (Id.)

Petitioner replied that he was prejudiced by his staff
representative's lack of investigation and by statements that his
staff representative made. (Reply, ECF No. 8 at 14-15.) Respondent
did not address the adverse remarks made by Petitioner's

representative at the hearing. (Reply, ECF No. 8 at 15-16.) He argues that his hearing was unfair because his representative made statements suggesting his guilt, which influenced the DHO. (Id. at 16.)

    2.  Analysis

28 C.F.R. § 541.8(d)(2) provides:

> (2) How the staff representative will help you. Prior to the DHO's hearing, the staff representative will be available to help you understand the incident report charges and potential consequences. The staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping you prepare evidence for presentation at the DHO's hearing. During the DHO's hearing, you are entitled to have the staff representative appear and assist you in understanding the proceedings. The staff representative can also assist you in presenting evidence during the DHO's hearing.

Petitioner claims that his staff representative failed to gather evidence on his behalf. Petitioner sought production of evidence of his back injury at the time the package of contraband was delivered to the prison. This evidence is not material to Petitioner's commission of the Code violation, attempt to possess a cell phone. Further, Petitioner did not identify any e-mails or phone conversations that were not produced and would have supported his defense that he was unaware that contraband would be delivered to him through the mail. See Donahue v. Grondolsky, 398 F. 3d 767,

772 (3d Cir. 2010) (due process is met in prison disciplinary proceeding where material exculpatory evidence is disclosed).

Petitioner contends that his staff representative violated his rights by becoming an investigator. As described in 28 C.F.R. § 541.8(a) above, a staff representative has an investigative role in helping the inmate prepare evidence for presentation. It is the DHO, not the staff representative, who is precluded from being an investigator of the charges in the incident report. See 28 C.F.R. § 541.8(b) ("Discipline Hearing Officer. The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident.")

Petitioner also alleges that his hearing was unfair because his staff representative made adverse statements regarding Petitioner at the hearing. The DHO wrote the following under the heading "Summary of Inmate Statement" in his hearing report:

> R. Echevarria, Staff Representative—Officer Echevarria stated that he talked with you about the body of the incident report, the e-mails, the dates and phone calls to your mother. He further states that this does not seem relevant to the body of the report and that you were aware of a package coming in. Your staff representative also states that after reviewing your phone calls and e-mails, he felt that you were talking in codes.

(Moran Decl., Ex. 10, ECF No. 7-4 at 2.) Then, under the heading "Specific Evidence Relied on to Support Findings" after an extensive review of the documentary evidence, the DHO wrote:

> Your staff representative's comments in your behalf were also considered, but for all the reasons listed above, his comments were not found to provide you relief of this charge, but he felt that you were talking in codes, which corroborated with the SIS investigation and the body of the incident report.

(Id. at 5.)

Assuming arguendo that due process is violated when an inmate's staff representative makes statements adverse to the inmate's defense, the harmless error standard is applicable. See e.g. Ancrum v. Holt, 506 F. App'x 95, 97-98 (3d Cir. 2012) (citing Elkin v. Fauver, 969 F.2d 48, 53 (3d Cir. 1992). [H]abeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Davis v. Ayala, 135 S. Ct. 2187, 2197 (2015) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting United States v. Lane, 474 U.S. 438, 449 (1986)). "Under this test, relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 2197-87 (quoting O'Neal v. McAninch, 513 U.S. 432, 436 (1995)).

The Court will consider the DHO's references to comments by Petitioner's staff representative in the context of the DHO report

as a whole. The DHO began his findings by stating that he based his decision "on the facts presented in the body of the written report." (Moran Decl., Ex. 10, ECF No. 7-4 at 3.) The DHO then recited the facts from the body of the incident report, summarizing the findings of the SIS investigation, and the SIS conclusion that Petitioner and inmate Taylor used telephone and e-mail systems to conspire with others on the outside to introduce contraband, including two cell phones, into the prison. (Moran Decl., Ex. 10, ECF No. 7-4 at 3-4.)

Then, the DHO considered Petitioner's statement that he was only helping Taylor with his legal work, and Taylor had asked Petitioner to call his niece, Triesha Washington, and that Petitioner's mother called Triesha and Fred. (Id. at 4.)

The DHO rejected Petitioner's account in favor of the written report by SIS Tech S. Saccone, together with evidence of the contraband recovered from the mail room, which was disguised as inmate property mailed to Petitioner. (Id.) The DHO discussed the e-mails and transcripts of phone calls cited in the SIS investigation report. (Id. at 4-5.) The DHO found nothing to substantiate Petitioner's claims that he was only helping Taylor with legal work. (Id. at 5.) Based on "the overwhelming evidence provided by the SIS investigation," the DHO concluded Petitioner was "a willing participant in the planning of attempting to

introduce cell phones and other contraband into FCC Coleman-Low."
(Id.)

The DHO's report indicates that Petitioner's staff representative made comments on Petitioner's behalf but those comments, which are not in the record, "were not found to provide you relief of this charge." This suggests that Petitioner's staff representative provided a defense to the charge that the DHO did not accept. The DHO then noted that the staff representative felt Petitioner was talking in codes, and that this corroborated the SIS investigation. (Moran Decl., Ex. 10, ECF No. 7-4 at 4.)

Upon review of the DHO's report, the Court is not left with grave doubt that comments by Petitioner's staff representative at the DHO hearing had a substantial influence on the DHO's decision. First, the DHO's report indicates that Petitioner's staff representative offered a defense that was rejected by the DHO. Second, in noting that the staff representative felt Petitioner was talking in codes, consistent with the finding of the SIS investigation, the DHO had already concluded that Petitioner was guilty of attempted cell phone possession based on "the overwhelming evidence provided by the SIS investigation." It is not likely that the staff representative's belief that Petitioner was talking in codes or that Petitioner knew a package was coming had substantial influence over the DHO's conclusion. For this reason, assuming it violated due process for Petitioner's staff

representative to make comments adverse to Petitioner's defense, the error was harmless on habeas review.[2]

## E.   Sufficiency of the Evidence

### 1.   The Parties' Arguments

Petitioner contends there is no evidence that he gave anyone consent to send him a package. (Petr's Mem., ECF No. 1-2 at 17.) Petitioner contests the DHO's interpretation of e-mails between himself and John Shively. (Id. at 17-18.) He notes that the package containing contraband was sent by Triesha Washington, not Shively. (Id.) Petitioner suggests, based on a monitored phone call between Triesha and Petitioner about Taylor's receipt of legal mail, that the contraband was intended for inmate Jerry Taylor. (Id. at 18.) Petitioner states he was a victim who did not consent to receive the package. (Id. at 19.) He asserts that the DHO's finding that he conspired with Taylor was merely conclusory. (Id. at 24.)

Respondent notes that the court's standard of review is whether there is any evidence to support the DHO's conclusion. (Answer, ECF No. 7 at 24.) Further, the reviewing court is not required to examine the entire record, independently assess credibility or weigh the evidence. (Id., citing Cardona v. Lewisburg, 551 F. App'x 633, 637 (3d Cir. 2014)). The DHO's

---

[2] The Court notes that the harmless error standard in the habeas context requires a greater showing of prejudice than the harmlessness standard on direct appeal of a trial. Davis, 135 S. Ct. at 2197.

conclusions were supported by the incident report describing the SIS investigation and extensive documentation from the investigation showing that during August 2015 through December 2015, Petitioner coordinated with multiple outside individuals, and later with inmate Taylor, to arrange for a package containing cell phones and narcotics, disguised as incoming inmate property mailed to Petitioner. (Answer, ECF No. 7 at 25-27.)

Petitioner's claim that Taylor duped him into thinking legal mail was being sent to him defies logic, Respondent asserts, because legal mail would not require a fraudulent mailing label, and it is unlikely that legal work would be mailed from friends and family members of another inmate. (Id. at 27.) Respondent argues that Petitioner's challenge to the evidence is an invitation to reweigh the evidence, which is outside the scope of the court's review. (Id.)

In reply, Petitioner states that in his phone call with Shively, used as evidence against Petitioner by the DHO, Petitioner asked Shively to buy some groceries and shoes for Petitioner's kids, and the package Petitioner received at the institution did not contain those items. (Reply, ECF No. 8 at 17, citing exhibits to Answer.) Thus, Petitioner concludes there was no evidence to support the DHO's hunch that Petitioner was talking in code. (Id.)

Regarding inmate Taylor's involvement in the alleged conspiracy, Petitioner claims that the recorded phone calls

indicate it was Taylor who supplied the instructions for sending the package containing contraband, and that Taylor set Petitioner up as a fall guy. (Reply, ECF No. 8 at 18-19.) Petitioner asserts he was only fooled into thinking he was assisting Taylor with legal work by having Petitioner's mother convey messages in exchange for Taylor's lawyer reviewing Petitioner's § 2255 motion. (Id. at 20.) Petitioner argues there is no evidence of a conspiracy from the SIS investigation or the DHO Report. (Id. at 21.)

### 2. Analysis

Although due process requires only that some evidence support the DHO's decision, 28 C.F.R. § 541.8(f) requires that when conflicting evidence is presented at a DHO hearing, the decision must be based on the "greater weight of the evidence[.]" Lewis v. Canaan, 664 F. App'x 153 n. 2 (3d Cir. 2016). The DHO's decision here met both standards.

The DHO relied on the conclusion of the SIS investigation, which provided circumstantial evidence that Petitioner talked in codes on the telephone and by e-mail as part of a conspiracy to obtain contraband in the prison through outside mail. Hill, 472 U.S. at 457 (no direct evidence is required to meet the "some evidence" standard). The DHO considered Petitioner's explanation of the e-mails and transcripts of phone calls but found that the greater weight of the evidence supported a conclusion that Petitioner conspired with others to obtain cell phones from outside

the prison, sent to him disguised as inmate property from another prison where Petitioner had previously been housed. (Moran Decl., Ex. 10, ECF No. 7-4 at 4-5); see McCarthy v. Warden Lewisburg USP, 631 F. App'x 84, 86 (3d Cir. 2015) (finding the DHO's decision indicated that the DHO considered conflicting evidence but the greater weight of the evidence supported the inmate's guilt of the code violation.) The evidence before the DHO was sufficient to satisfy due process.

F.  Excessive Sanction

1.  The Parties' Arguments

Petitioner contends that, according to BOP Policy, a violation of Code 108 carries a maximum sanction of loss of 41 days good conduct time, and Petitioner's loss of 140 days good conduct time violated his Eighth Amendment rights. (Petr's Mem., ECF No. 1-2 at 24.)

The DHO imposed a sanction of 40 days loss of good conduct time, forfeit of 100 days non-vested good conduct time and suspension of commissary, email and telephone privileges for one year, which, according to Respondent, is consistent with 28 C.F.R. § 541.3. (Answer, ECF No. 7 at 27.) Section 541.3 permits sanctions for 108 Code violations including disallowance of 27-41 days of good conduct time; forfeit up to 100% non-vested good conduct time; 12-months disciplinary segregation and loss of visitation, phone,

commissary and other privileges. (Answer, ECF No. 7 at 28.) Thus, the sanctions fall within the applicable regulation. (<u>Id.</u>)

### 2. Analysis

Respondent is correct. 28 C.F.R. § 541.3 contains a table of prohibited acts and available sanctions. Code 108, possession of a hazardous tool, is a greatest severity level offense. "Aiding, attempting, abetting, or making plans to commit any of the prohibited acts is treated the same as committing the act itself." 28 C.F.R. § 541.3 (a). Each of the sanctions imposed on Petitioner are available sanctions for violation of Code 108.

## III. CONCLUSION

For the reasons discussed above, the Court denies Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241.

An appropriate Order follows.


s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

Dated: June 27, 2019